# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ANWAR OUAZZANI-CHAHDI, | § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. H – 05 – 1898 |
| GREENSBORO NEWS & RECORD, INC., | § § § | |
| Defendant. | § § § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Greensboro News & Record, Inc.'s Motion to Dismiss (Doc. # 3) for lack of personal jurisdiction, improper venue, and failure to state a claim. For the following reasons, Defendant's Motion to Dismiss is **GRANTED**.

I.  BACKGROUND

This case arises from a *Greensboro News & Record* ("*News & Record*") article entitled "Fake-marriage schemes commonplace," which Defendant published on April 25, 2004, and which Plaintiff claims defamed him. Plaintiff is a citizen of Texas, while Defendant is a citizen of North Carolina. Plaintiff originally filed suit in the 165th District Court of Harris County, Texas, bringing claims for slander *per se*, negligence, and gross negligence. Defendant removed the case on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332, and subsequently filed the present Motion to Dismiss, arguing that the Court does not have personal jurisdiction over it. Plaintiff timely filed a response, arguing that the Court has specific jurisdiction over Defendant and seeking to conduct

discovery for the purpose of establishing general jurisdiction. Both parties timely filed additional arguments.

## II. ANALYSIS

### A. Personal Jurisdiction

A federal district court sitting in diversity generally conducts a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant. First, the Court must consider whether exercising jurisdiction comports with constitutional due process. If due process is met, the Court must next determine whether the forum state's long arm statute confers personal jurisdiction. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Because the Texas Long Arm Statute is coextensive with the limitations of due process, however, questions of personal jurisdiction in Texas are analyzed entirely within the framework of due process. *Id*.; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 et seq. (Vernon 2004).

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). Specific jurisdiction exists "[w]hen a

nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. (quotations omitted). General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Id*.

## B. General Jurisdiction

To make a prima facie showing of general jurisdiction, Plaintiff must produce evidence affirmatively demonstrating that Defendant's contacts with Texas are substantial, continuous, and systematic. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000). This test is difficult to meet because it requires a showing of extensive contacts between Defendant and Texas. *Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). If Plaintiff establishes minimum contacts between Defendant and Texas, then Defendant has the burden of proving that assertion of jurisdiction is unfair and unreasonable. *Cent. Freight Lines, Inc.*, 322 F.3d at 384.

Plaintiff has failed to make a prima facie showing of general jurisdiction over Defendant. Defendant Greensboro News & Record, Inc. is a North Carolina corporation with its principal place of business in North Carolina. Defendant does not transact business in the State of Texas. Defendant has no employees or agents within Texas. Defendant owns no real or personal property located in Texas, and Defendant pays no property taxes, sales taxes, or other state or local taxes within the State of Texas. Defendant's primary business activity is the publication of the *News & Record*, which is circulated primarily in the County of Guilford and elsewhere across the State of North

3

Carolina. Of the *News & Record's* average daily circulation of 95,600 copies, 99% of these copies are circulated within North Carolina.

Plaintiff points out that while the *News & Record* is distributed primarily in North Carolina, it also has three subscriptions that are distributed by mail in the State of Texas. The mailing of three subscriptions, however, is not a substantial contact with Texas and is insufficient to establish general jurisdiction. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426-28 (5th Cir. 2005) (finding the distribution of seventy copies out of 750,000 weekly copies and sixty copies out of 1,000,000 weekly copies to be insubstantial).

That the allegedly defamatory article was accessible over the Internet on the website of the *News & Record* is also insufficient to establish general jurisdiction over Defendant. On the contrary, the Fifth Circuit has held that a "passive website," which does nothing more than allow its owner to advertise or post information on the Internet, does not give rise to personal jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002) (holding that "[t]hough the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of [Defendant] with Texas are not in any way 'substantial'"); *Mink*, 190 F.3d at 336 (looking to the "nature and quality of commercial activity that an entity conducts over the Internet"). Here, Plaintiff has not suggested that Defendant's *News & Record* website is anything other than a passive website, allowing for the posting of articles that may then be viewed by persons all over the world. This does not create any substantial ties between Defendant and the State of Texas, and it does not establish jurisdiction over Defendant.

Plaintiff has argued, in both his response to Defendant's motion and at a hearing before this Court, that he should be permitted discovery into the existence of any plans Defendant might have for the expansion of its business into Texas or the targeting of Texas customers. Such discovery is unwarranted. Defendant has, by affidavit of its President, Robin Saul, stated that it does not take any action to obtain subscribers or advertisers in the State of Texas. Any future plans that Defendant may have to expand its business into Texas are irrelevant to the Court's existing jurisdiction over Defendant.

A district court has "broad discretion in all discovery matters," and need not permit discovery on matters of personal jurisdiction when there is no issue of material fact. *Wyatt v. Kaplan*, 686 F.2d 276, 283-84 (5th Cir. 1982). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.* at 284. A district court may thus refuse discovery where a party has failed to show how further inquiry would affect the court's jurisdictional determination or make at least a preliminary showing of personal jurisdiction. *See Fielding*, 415 F.3d at 429. Here, Plaintiff has not made either a preliminary showing of the Court's jurisdiction over Defendant or shown how Defendant's future plans would impact the Court's jurisdiction in any way. Finding no issue of material fact for which discovery is necessary, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

### C. Specific Jurisdiction

A court has specific jurisdiction over a cause of action when "the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). The Fifth Circuit has held that specific jurisdiction in a libel case, such as this one, can be

maintained over a publisher in two instances: (1) where the publication has "adequate circulation in the state," under *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1983), and (2) where the publisher "aims a story at the state knowing that the effects of the story will be felt there," under *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Fielding*, 415 F.3d at 425 (quotations omitted).

Plaintiff has failed to show that Defendant's circulation of the *News & Record* in Texas is adequate to support the Court's exercise of jurisdiction over it. In *Keeton*, the Supreme Court held that the "regular circulation of [10 to 15,000] magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Keeton*, 465 U.S. at 773-74. Such circulation was "purposefully directed" at the forum state and could not "be characterized as random, isolated, or fortuitous." *Id.* at 774. In contrast to the thousands of magazines circulated by the defendant in *Keeton*, however, the defendants in *Fielding* distributed just seventy out of 750,000 issues and sixty out of 1,000,000 issues in the forum state. 415 F.3d at 422. The Fifth Circuit found that this level of circulation did not rise to the "substantial number of copies . . . regularly sold and distributed" requirement of *Keeton*, and that the distribution of these issues did not give rise to specific jurisdiction over the defendants. *Id.* at 426-27.

Here, Defendant distributes only three mail subscriptions of the *News & Record* to Texas, out of a total daily circulation of 95,600 copies. This is an even smaller presence that the seventy issues out of 750,000 found to be inadequate in *Fielding*. By mailing three copies of the *News & Record* to subscribers in Texas, Defendant cannot be said to have purposefully availed itself of the State of Texas or to have minimum contacts

6

with Texas.  Defendant's minimal circulation of the *News & Record* in the State of Texas is not adequate to support the Court's exercise of specific jurisdiction over it.

Likewise, Plaintiff has failed to show that Defendant aimed its allegedly defamatory article at the State of Texas knowing that the effects of the article would be felt here, as required by *Calder*, 465 U.S. at 789-90.  In *Calder*, a California court's exercise of personal jurisdiction was found to be proper over defendants who published an allegedly libelous story that concerned the California activities of a California resident, was drawn from California sources, and caused harm to be suffered primarily in California.  *Id.* at 788-89.  Conversely, in *Fielding*, personal jurisdiction was found to be lacking where the allegedly libelous articles were not aimed at or focused upon Texas, despite the use of Texas sources and references to the plaintiff's career in Texas, since those sources and references were "merely collateral to the focus of the articles." *Fielding*, 415 F.3d at 427.  The court noted that "the *Calder* test must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state."  *Id.* at 426.

Here, Defendant's article contains even less connection to Texas than those held to be inadequate in *Fielding*.  The article itself contains references to five domestic relations cases filed in Guilford County, North Carolina.  Texas is in no way the subject matter or focus of the article.  The article made no mention of Texas, relied upon no sources in Texas, and included no research conducted in Texas.  Plaintiff argues that he resides in Texas, read the article in Texas, and suffered harm in Texas.  Plaintiff additionally notes that his Texas address is accessible on the Internet and argues that Defendant could easily have ascertained Plaintiff's Texas residency.  While Plaintiff may

7

well be correct that Defendant's article caused him to suffer harm within the State of Texas, however, this does not show that Defendant aimed its article at the State of Texas or that Defendant actually knew that the effects of its article would be felt within the State of Texas, as required by *Calder* and *Fielding*. Plaintiff has therefore failed to show facts giving rise to this Court's exercise of specific jurisdiction over Defendant.

## III. CONCLUSION

The Court reaches its conclusion with reluctance. Plaintiff may have been defamed, and bringing an action in another state may be cost-prohibitive. Still, the law is clear and indicates that personal jurisdiction over the Defendant is lacking in this case. Because this Court does not have personal jurisdiction over Defendant, the Court hereby **GRANTS** its Motion to Dismiss. Plaintiff's request for jurisdictional discovery is **DENIED**. This case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 27th day of September, 2005.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**